**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
    lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RANDALL ULBRICHT, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TERNIUM S.A., DANIEL AGUSTIN NOVEGIL, MAXIMO VEDOYA, PABLO BRIZZIO, and PAOLO ROCCA,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Randall Ulbricht ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ternium S.A. ("Ternium" or the "Company"), analysts' reports and advisories about the Company, and information

1

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Ternium from May 1, 2014 through November 27, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Ternium, through its subsidiaries, manufactures and processes various steel products in Mexico, Argentina, Paraguay, Chile, Bolivia, Uruguay, Brazil, the United States, Colombia, Guatemala, Costa Rica, Honduras, El Salvador, and Nicaragua. The Company is incorporated and based in Luxembourg. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TX."

8. Defendant Daniel Agustín Novegil ("Novegil") served as the Company's Chief Executive Officer ("CEO") from 2005 until 2018. He currently serves as a director and Vice Chairman of the Board of Directors (the "Board").

9. Defendant Máximo Vedoya ("Vedoya") has served as the Company's CEO since March 1, 2018.

10. Defendant Pablo Brizzio ("Brizzio") has been the Company's Chief Financial Officer ("CFO") throughout the Class Period.

11. Defendant Paolo Rocca ("Rocca") has been the Chairman of the Company's Board since 2005. He is also Chairman and CEO of Tenaris, S.A. ("Tenaris"). Tenaris produces and sells steel tubular products and related services. Tenaris held 11.46% of Ternium's share capital as of December 31, 2017.

12. Defendants Novegil, Vedoya, Brizzio, and Rocca are sometimes referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background
### Ternium's Interest in Sidor

17. Ternium was formed in 2005 by the consolidation of Siderar of Argentina, Sidor of Venezuela, and Hylsa of Mexico.

18. In 2008, Venezuela ordered the nationalization of Sidor, a Venezuelan steel company.

19. On May 7, 2009, Ternium sold its 59.7% stake in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity. Ternium agreed to receive $1.97 billion USD for the sale of its interest. It took several years—from 2009 to 2012—for Ternium to receive the money.

### Ternium's Code of Conduct

20. The Company's Code of Conduct, effective as of November 5, 2013, contained a heading, "Bribery is Strictly Prohibited." The Code of Conduct further stated that "Ternium will not condone, under any circumstances, the offering or receiving of bribes or any other form of improper payments."

### Materially False and Misleading Statements

21. On April 30, 2014, after market hours, Ternium filed a Form 20-F for the fiscal year ended December 31, 2013 with the SEC (the "2013 20-F"), which provided the Company's year-end financial results and position. The 2013 20-F was signed by Defendant Brizzio. The 2013 20-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Novegil and Brizzio attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22. The 2013 20-F provided information concerning Ternium's sale of its 59.7% interest in Sidor to a Venezuelan state-owned entity, stating in relevant part:

> On April 29, 2008, the National Assembly of Venezuela passed a resolution declaring that the shares of Sidor, together with all of its assets, were of public and social interest, and authorizing the Venezuelan government to take any action it deemed appropriate in connection with any such assets, including expropriation.

> On May 11, 2008, the President of Venezuela issued Decree Law 6058 ordering that Sidor and its subsidiaries and associated companies were transformed into state-owned enterprises ("empresas del Estado"), with Venezuela owning not less than 60% of their share capital. On May 7, 2009, Ternium completed the transfer of its entire 59.7% interest in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity.
>
> \* \* \*
>
> ***Ternium's cash flows for 2011 and 2012 include non-recurring payments received in connection with the transfer of our interest in Sidor to Venezuela.*** On May 7, 2009, we completed the transfer of our entire 59.7% interest in Sidor to CVG. Ternium agreed to receive an aggregate amount of USD1.97 billion as compensation for its Sidor shares. Ternium received payments from CVG, including interest, totaling USD953.6 million, USD767.4 million, USD133.1 million and USD136.7 million in 2009, 2010, 2011 and 2012, respectively. With the last payment in October 2012, the pending dispute relating to the nationalization of Sidor was resolved.

23. The 2013 20-F also referenced the Company's Code of Ethics and Code of Conduct, stating in relevant part:

> We have adopted a code of ethics that applies specifically to our principal executive officers, and principal financial and accounting officer and controller, as well as persons performing similar functions. We have also adopted a code of conduct that applies to all company employees, including contractors, subcontractors and suppliers.
>
> The text of our code of ethics for senior financial officers and code of conduct for employees is posted on our web site at: http://www.ternium.com/en/ir/governance.

24. On June 1, 2015, after market hours, Ternium filed a Form 20-F for the fiscal year ended December 31, 2014 with the SEC (the "2014 20-F"), which provided the Company's year-end financial results and position. The 2014 20-F was signed by Defendant Brizzio. The 2014 20-F also contained signed SOX certifications by Defendants Novegil and Brizzio attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25. The 2014 20-F provided information concerning Ternium's sale of its 59.7% interest in Sidor to a Venezuelan state-owned entity, stating in relevant part:

6

> On April 29, 2008, the National Assembly of Venezuela passed a resolution declaring that the shares of Sidor, together with all of its assets, were of public and social interest, and authorizing the Venezuelan government to take any action it deemed appropriate in connection with any such assets, including expropriation. On May 11, 2008, the President of Venezuela issued Decree Law 6058 ordering that Sidor and its subsidiaries and associated companies were transformed into state-owned enterprises ("*empresas del Estado*"), with Venezuela owning not less than 60% of their share capital. On May 7, 2009, Ternium completed the transfer of its entire 59.7% interest in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity.
>
> \* \* \*
>
> ***Ternium's cash flows in 2012 include non-recurring payments received in connection with the transfer of our interest in Sidor to Venezuela.*** On May 7, 2009, we completed the transfer of our entire 59.7% interest in Sidor to CVG. Ternium agreed to receive an aggregate amount of USD1.97 billion as compensation for its Sidor shares. Ternium received payments from CVG, including interest, totaling USD953.6 million, USD767.4 million, USD133.1 million and USD136.7 million in 2009, 2010, 2011 and 2012, respectively. With the last payment in October 2012, the pending dispute relating to the nationalization of Sidor was resolved.

26. The 2014 20-F also referenced the Company's Code of Ethics and Code of Conduct, stating in relevant part:

> We have adopted a code of ethics that applies specifically to our principal executive officers, and principal financial and accounting officer and controller, as well as persons performing similar functions. We have also adopted a code of conduct that applies to all company employees, including contractors, subcontractors and suppliers.
>
> The text of our code of ethics for senior financial officers and code of conduct for employees is posted on our web site at: http://www.ternium.com/en/ir/governance.

27. On April 29, 2016, Ternium filed a Form 20-F for the fiscal year ended December 31, 2015 with the SEC (the "2015 20-F"), which provided the Company's year-end financial results and position. The 2015 20-F was signed by Defendant Brizzio. The 2015 20-F contained signed SOX certifications by Defendants Novegil and Brizzio attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

7

28. The 2015 20-F provided information concerning Ternium's sale of its 59.7% interest in Sidor to a Venezuelan state-owned entity, stating in relevant part:

> On April 29, 2008, the National Assembly of Venezuela passed a resolution declaring that the shares of Sidor, together with all of its assets, were of public and social interest, and authorizing the Venezuelan government to take any action it deemed appropriate in connection with any such assets, including expropriation. On May 11, 2008, the President of Venezuela issued Decree Law 6058 ordering that Sidor and its subsidiaries and associated companies were transformed into state-owned enterprises (*"empresas del Estado"*), with Venezuela owning not less than 60% of their share capital. On May 7, 2009, Ternium completed the transfer of its entire 59.7% interest in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity.

29. The 2015 20-F also referenced the Company's Code of Ethics and Code of Conduct, stating in relevant part:

> We have adopted a code of ethics that applies specifically to our principal executive officers, and principal financial and accounting officer and controller, as well as persons performing similar functions. We have also adopted a code of conduct that applies to all company employees, including contractors, subcontractors and suppliers.
>
> The text of our code of ethics for senior financial officers and code of conduct for employees is posted on our web site at: http://www.ternium.com/estructura-corporativa/gobierno-corporativo/?lang=en.

30. On May 1, 2017, Ternium filed a Form 20-F for the fiscal year ended December 31, 2016 with the SEC (the "2016 20-F"), which provided the Company's year-end financial results and position. The 2016 20-F was signed by Defendant Brizzio. The 2016 20-F contained signed SOX certifications by Defendants Novegil and Brizzio attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

31. The 2016 20-F provided information concerning Ternium's sale of its 59.7% interest in Sidor to a Venezuelan state-owned entity, stating in relevant part:

> On April 29, 2008, the National Assembly of Venezuela passed a resolution declaring that the shares of Sidor, together with all of its assets, were of public

8

and social interest, and authorizing the Venezuelan government to take any action it deemed appropriate in connection with any such assets, including expropriation. On May 11, 2008, the President of Venezuela issued Decree Law 6058 ordering that Sidor and its subsidiaries and associated companies were transformed into state-owned enterprises (*"empresas del Estado"*), with Venezuela owning not less than 60% of their share capital. On May 7, 2009, Ternium completed the transfer of its entire 59.7% interest in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity.

32.     The 2016 20-F also referenced the Company's Code of Ethics and Code of Conduct, stating in relevant part:

We have adopted a code of ethics that applies specifically to our principal executive officers, and principal financial and accounting officer and controller, as well as persons performing similar functions. We have also adopted a code of conduct that applies to all company employees, including contractors, subcontractors and suppliers.

The text of our code of ethics for senior financial officers and code of conduct for employees is posted on our web site at: http://www.ternium.com/estructura-corporativa/gobierno-corporativo/?lang=en.

33.     On April 24, 2018, Ternium filed a Form 20-F for the fiscal year ended December 31, 2017 with the SEC (the "2017 20-F"), which provided the Company's year-end financial results and position. The 2017 20-F was signed by Defendant Brizzio. The 2017 20-F also contained signed SOX certifications by Defendants Vedoya and Brizzio attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

34.     The 2017 20-F provided information concerning Ternium's sale of its 59.7% interest in Sidor to a Venezuelan state-owned entity, stating in relevant part:

On April 29, 2008, the National Assembly of Venezuela passed a resolution declaring that the shares of Sidor, together with all of its assets, were of public and social interest, and authorizing the Venezuelan government to take any action it deemed appropriate in connection with any such assets, including expropriation. On May 11, 2008, the President of Venezuela issued Decree Law 6058 ordering that Sidor and its subsidiaries and associated companies were transformed into state-owned enterprises (*"empresas del Estado"*), with Venezuela owning not less than 60% of their share capital. On May 7, 2009, Ternium completed the transfer

9

of its entire 59.7% interest in Sidor to Corporación Venezolana de Guayana, or CVG, a Venezuelan state-owned entity.

35. The 2017 20-F also referenced the Company's Code of Ethics and Code of Conduct, stating in relevant part:

> We have adopted a code of ethics that applies specifically to our principal executive officers, and principal financial and accounting officer and controller, as well as persons performing similar functions. We have also adopted a code of conduct that applies to all company employees, including contractors, subcontractors and suppliers.
>
> The text of our code of ethics for senior financial officers and code of conduct for employees is posted on our website at: http://www.ternium.com/en/about-us/code-of-conduct/

36. The statements referenced in ¶¶21-35 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Rocca, Ternium's Chairman, knew that one of his company's executives paid cash to government officials from 2009 to 2012 to expedite compensation payments for the sale of Ternium's Sidor unit; (2) this conduct would lead Rocca to be charged in a graft scheme and subject Ternium, its affiliates, and/or its executives to heightened governmental scrutiny; and (3) as a result, Ternium's public statements were materially false and/or misleading at all relevant times.

### The Truth Emerges

37. On November 27, 2018, *Bloomberg* reported that Rocca was indicted for his role in a graft scheme. The articles states, in relevant part:

> The Argentine judge overseeing an investigation into the so-called notebook scandal has indicted billionaire Paolo Rocca as part of a graft case. Shares of steel pipe-maker Tenaris SA, in which he is the majority shareholder, plunged.

> The judge set a $103 million bond and forbade Rocca from leaving the country.
>
> *   *   *
>
> The judge charged Rocca after the Argentine billionaire testified that one of his company's executives paid an undisclosed amount of cash to government officials in monthly installments from 2009 to 2012. The officials were allegedly working for then-President Cristina Fernandez de Kirchner's administration to speed up a compensation payment from Venezuela's Hugo Chavez for the nationalization of Sidor, a unit that had been seized by Venezuela. Rocca's group was compensated with $1.95 billion for the unit.

38. On this news, shares in Ternium's stock fell $1.42 per share or nearly 5% to close at $28.02 per share on November 27, 2018, damaging investors.

39. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<b><u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u></b>

40. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Ternium during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class

11

may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NYSE, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the

true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

47. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they

contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

53. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

54. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and

disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

55. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

56. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

57. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

58. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

61. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

62. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

63. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and

exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 29, 2018               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, NY 10016

Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*